This case on the Doctrine of Indigestion, 14-0611 Linda Molitor v. Donna Levenkirch On behalf of Mr. Kelley On behalf of Ms. Bless On behalf of Ms. Kelley On behalf of Ms. Levenkirch Ms. Brief, Ms. Bless Yes, Your Honor Good morning, Your Honors Good morning, Counsel On behalf of my client, Linda Molitor, I thank you very much for the opportunity to speak with you today Obviously, you've received our briefs and you've submitted them Representing the appellant, I would just like to make a few points Could you pull that microphone just a little closer because we are being recorded and we want you to be heard Very good, thank you very much, Your Honor Obviously, as you are aware, this case arises as a result of a property sale and at issue is the proceeds of that property sale The parties are sisters and the property at issue was originally owned by the sisters' parents having been acquired by the parents back in 1990 Prior to the matters that give rise to us being here before you today the parties had spoken with their parents about this property and when both the mother and the father were still alive the father had distinctly expressed his wishes to the girls that he wished for them to be placed on the deed to the property so that they would be able to share equally after both parents passed and that it would be easier for the girls to administer the family's affairs after both parents passed The father passed without taking any action in that regard, however After the father's death, the mother, Jane Lundquist, again approached the girls and indicated that she wished to take whatever steps were necessary to effectuate what the father had desired She wanted to put both girls on title to the property so that when she passed, the property would be theirs to do with as they saw fit and they would share equally in the property or its proceeds at the time of sale In order to do that, the mother, in conjunction with both of the daughters on May 23, 2011, I'm sorry, on October 30, 2009 executed a deed which transferred the property to herself to both daughters, the plaintiff and the defendant in this action which upon the mother's passing then, both daughters would have an equal share in the property But something happened in the interim Something happened in the interim, yes My client, Ms. Molitor, began to experience financial difficulties Her husband had passed away, she had been operating a business of her own which she necessitated selling She was working for a company for a period of a year, she was laid off She was concerned about her financial condition and what direction that was taking So who proposed to transfer them the title? My client did To her sister? To her sister and to her mother Because the mother was still living in the home, this was her mother's home She didn't want her financial difficulties to have any impact on the mother So we can not fairly say at the outset at least, and this is not a controlling factor that the defendant didn't pressure your client into this transfer I would agree with that, Your Honor, that's correct It was my client who proposed it, it was my client who prepared the subject deed which is the May 23, 2011 deed and it was my client who presented that to her mother and her sister for that signature At the time this occurred, was your, the other sister, was she already involved in real estate? She was, she had been involved in real estate for some time She was a licensed, and to this day remains a licensed realtor in the state of Illinois She had represented clients in real estate transactions and she had bought and sold a number of her own homes Were any lawyers consulted prior to this time? There were not I don't believe any attorneys were consulted, Your Honor, until we get to the point in time where the subject property is being sold So to your knowledge, were there any discussions about trusts or any other things that could have happened? Not to my knowledge, and the record is completely void of any discussions to that effect And your client never entrusted her sister with her finances, or there was no fiduciary obligations on the part of Don, were there? There were occasions where both sisters loaned money to one another and held notes with one another Yeah, I'm not talking about loaning money, I'm talking about placing your trust in another person to handle your finances There were never any other deeds, any other conveyances between the sisters, nor, as the Court had asked, there were never any other trusts involving the sisters So to impose a constructive trust, one of the elements would be, and the trial court obviously didn't do this, is whether or not there was some type of a fiduciary relationship that was somehow breached Correct What factors can you point us to to establish that a fiduciary relationship was breached or that should give rise to a constructive trust? There are three cases that we mentioned in our brief, Your Honor, which you'll see McCartney is one of them, Bremer is another, and the third is Nerotner Eppley in her brief also cites the case of Pottinger, all of which I think are very instructive on the imposition of constructive trust in this setting McCartney indicates to us that a constructive trust can be founded upon a fiduciary relationship where you have a degree of kinship, here we have sisters, where you have a disparity in age Admittedly, these sisters were fairly close in age, and where you have a disparity in business experience I've looked at McCartney, let me cut to the chase and confront you at this point Again, the parties were siblings, they were brothers, they held title, some similarities However, the Supreme Court there specifically held, and I think the case turned on this, quote Shows the plaintiff relied on defendant in the handling of his affairs and reposed confidence in the latter Was there ever intermingling or handling of affairs between the sisters? To the extent that Eppley, the defendant in this case, worked for my client on a period of time She did handle some of her business affairs, my client was looking to employ her on a full-time basis Once she got back on her feet and financially re-established herself So there was, in a business context, there was some handling of affairs between the sisters So no personal handling of affairs, was there? Apart from the loans that they had to one another and the support and the confidence that they reposed in one another And helping each other through difficult circumstances, no, there was no, for example, shared bank accounts There was no, as the court... Nothing highly ordinary other than what you just... Familial relationships and supporting of one another However, again with the case law, I believe that you see The courts are telling us that a fiduciary relationship will exist in every case Where trust and confidence are reposed by one person in another Who as a result gains influence and opportunity over the other The basis for that trust and confidence is irrelevant, is immaterial That's what comes from Narottner It will arise and exist where one person trusts and relies on the other So in this circumstance, my client placed her trust in her sister That once she weathered this financial storm, she would be returned to title on the property Well, how would that be different though in any case? Based on that, you can always say whenever you convey to your sibling That you're having financial problems A constructive trust would automatically be created because you're imposing some level of trust Merely by the conveyance But I don't think the case law says that automatically you get a constructive trust There has to be something more than a familial relationship, it would seem to me And I agree, your honor, that there is usually more than a familial relationship And I believe that there was here under the facts as well Here you have the sister speaking with their mother They're working to effectuate the mother's wishes The mother's will is reflective that she wants both daughters to share equally in the property Had these deeds not happened Had the mother died without placing both of the daughters on the deed as initially Or any of the subsequent deeds, the property would have gone into the mother's trust But what was the motivating factor that set the wheels in motion that caused this to happen? It seemed to me that the mother's wishes had been effectuated It was the financial reversals or setbacks suffered by the client That became the motivating factor for this conveyance, right? That is correct, your honor That can't be attributed to the defendant, can it? It can't, but with that, with my client coming forward and expressing her difficulties to her family And to her sister and saying what's important to me is that I protect mom's house I don't want to become a burden on mom or a shadow on mom's title And the family agreeing together that they are going to make this transfer Take my client off of title for a period of time and restore her to title at some point in the future My client has no reason to believe that that is not going to happen She has every faith as she has with her sister in the past That, for example, when money is lent, it has always been paid back There's never been trouble In her mind, this is a similar situation She's in essence lending her sister the property for the sake of protecting it Sometimes we see this and it's a sad and unfortunate commentary But isn't there in the law a difference between a moral obligation and a legal obligation? And not necessarily one and the same? There is, Your Honor But I think we have a set of circumstances When you look at it in the context of McCartney, in the context of Nerottner And in the context of even Pottinger, which Eppeley cites You have a situation where constructive trust arises because of this trust and confidence In the familial context and in the relationship You then have a situation where one party then profits from that relationship afterwards Here, the sister is now the sole title holder to the property She was when they took her off the title And subsequent to that, we have another deed which the appellee herself prepared Which is dated March 19, 2013 And the grantors on that deed are the mother, who was still living at the time, and the appellee And the property is then being deeded solely to the appellee It's only signed by the appellee Whatever legal effect that deed may have, probably nothing I think it is highly indicative of the appellee's intent I think despite the conversations with the family Despite the confidence that her sister placed in her, rightly or wrongly The defendant, by her own admission, stated in her testimony That she never intended to retitle the property to her sister Is this more a case of some sort of inappropriate influence on Jane prior to her death? To accomplish this? Honestly, Your Honor, there's no documentation of that There's nothing contained in the record that Jane was in any way even aware of this March 19, 2013 deed It seems to be something that the appellee took upon herself to prepare, to execute, and to record Let's also put this in the context of the standard of review, which is important As you all know, as an experienced attorney We're not allowed to substitute our judgment for that of the trial court The standard of review here is, was the trial court's decision against the manifest wit of the evidence, correct? Correct, Your Honor Generally defined as an opposite conclusion is clearly apparent That's a pretty tight hurdle, isn't it? It is, it is a burden, and we acknowledge that, Your Honor But I think when the totality of the circumstances are looked at When you look at the conversations between the parties When you look at the familial history When you look at the efforts to effectuate the mother's wishes While the mother was still alive And then you see this action by the appellee Specifically this March 19, 2013 deed Where she, in essence, attempts to deed the property to herself Even though the property was already hers from the previous deed upon the mother's passing I think that is a very clear intent by the appellee To defraud my client from whatever interest she may have had May have been entitled to have, may have attempted to claim in the future When you say defraud Defraud, generally speaking, the person's taking some affirmative act As opposed to just taking advantage of the actions of another person Correct And they're different Yes Those are different Yes And the other thing is, you cited Narottner a few times That case was not whether or not the plaintiff had sustained a burden of proof It was whether or not the pleadings were sufficient, correct? It was And in that case, also, there was an allegation in the complaint That the sister owed a fiduciary duty She had maintained the books and records And prepared all the financial statements, reports, tax returns And other required documents in a family business That's not the case here, correct? That's correct, Your Honor The business relationship between our clients was solely in the context of my client's business It was different, it was not the family business However, Narottner, I think, is instructive As far as a constructive trust and when the imposition of a constructive trust will arise And that's where we get the citation from the court That the origin of the confidence and source of influence are immaterial It exists when the person entrusts and relies upon another And I believe that we have that circumstance here And I believe that the actions of the defendant, again, in creating that final deed that's recorded Again, for whatever legal impact it would have Speak volumes about what the appellee's intentions were all along And I believe that that further evidences the appellee's efforts to take advantage of the situation Well, what was that case that you say all along? You conceded that the motivating force for the transfer at the outset was your client's financial situation Correct, for the May deed, correct So that really had nothing to do with what happened later, did it? It did, and as Your Honor said before, it set the wheels in motion Now you have appellee in a position where it is just she and her mother remaining on the deed So she is now in a position where once the mother passes, the property is going to go to her The mother's will controls the personal property, this deed controls the real property The mother's will accurately reflected the mother's wishes, that it be divided equally amongst the two siblings Of interest, there is a third sibling, a son, who was not mentioned in the parent's will So he's not included on any of these deeds So the parents were clear in expressing their wishes and their desires But let's assume all that's true, I'm intrigued by your argument So, okay, it starts out, it's going to be a good fit, both sides in the exception believe This is probably a temporary situation, when your client's financial circumstances get better They'll convey the property back into the joint tenancy So let's assume at some point then the other side, the defendant says Ah, you know, I can take advantage of this now, I really am in the driver's seat How does that lend into the constructive trust that this feeling about taking advantage of it Arose subsequent to the conveyance? The case law all indicates that where the party later gains an advantage Or gains a superior position, or somehow in this situation As in McCartney and in Bremer, acquires property by virtue of the conveyance That is what triggers your constructive trust You don't acquire the property with an improper purpose or fraud that you're pointing to This, you know, situation, taking advantage of it, arose later If you ask somebody, hey, can I put the title in your name, do me a favor And they say, sure, where's the improper purpose? A fiduciary relationship was created And the improper purpose then occurred after the fiduciary relationship Well, the fiduciary relationship would have to exist due to other factors I don't think you're saying a mere conveyance creates it, does it? I believe it does In this context, where the purpose of the initial conveyance Was to protect the property for the sake of the mother With the intention that my client will be added back on later You do have that fiduciary relationship Do you have any case law that says that in and of itself creates a fiduciary obligation Giving rise to a constructive trust? I believe it's very, very akin and similar to McCartney And I would direct your attention to McCartney But nothing exactly in point with that principle That says every conveyance with the intention of conveying back creates a fiduciary relationship Do you have a case law that says that? I don't have one that says every conveyance, Your Honor But McCartney is a similar circumstance with brothers, avoiding creditors, et cetera There seems to be, or there seems to have been an argument about some personal property, too Is that no longer, that is not an issue in this case, correct? That is not an issue in this case, Your Honor It was a relatively small amount of personal property The proceeds from the real estate sale are being held in trust That's the main focus All right Thank you very much And Mr. Leibovich? Good morning, Your Honors Pardon me, I'm suffering from a cold And counsel The first thing I'd like to do is clear any confusion or ambiguity relating to this deed of March 19th, 2013 Purportedly transferring title from the then deceased Jane Lundquist and Donna Lundquist to Donna Lundquist It does raise a few eyebrows, yes First of all, that deed was prepared after Jane Lundquist's death And the prior deed from 2011 Which was conveying, which conveyed title Into the names of only Jane and Donna Lundquist Created a joint tenancy between them So at Jane's death, Donna took sole title by operation of law So this deed of 2013 Is it meaningless? It's red herring Okay Yeah, it's meaningless In other words, again, joint tenancy traditional principles Upon the death of the other joint tenant The surviving joint tenant inherits the entire property or tenancy by operation of law So even if you're saying if the defendant had done this, it didn't affect anything Correct Title that already passed automatically by operation of law In December of 2012 Okay Can it be used, as counsel is indicating To manifest her, her sort of evil intention That this is what she wanted all along I think that's a stretch We don't know why that deed was executed It was, there was never any testimony concerning why that deed was executed And keeping in mind that the only two witnesses in this case Was the plaintiff and the defendant So we don't know what the motivation was So this case is going to turn, as you pick up on the questions Counsel is alluding, as she knows There has to be some ostensible breach of a fiduciary relationship here She points to some factors that she believes created Or establishes a breach of the fiduciary relationship between the sisters What do you have to say as to why there was not some type of a fiduciary relationship Or obligation between the parties Well, in order to argue a constructive trust Molitor has to show that there was a fiduciary relationship Between her and Plumquist And that fiduciary relationship was breached There's no fiduciary relationship as a matter of law So it has to be created What do they point to to support the creation of a fiduciary relationship Their sisters They confided in each other Not as much in recent years They communicated on a weekly basis by telephone They lent each other money Which each of them repaid to the other Plumquist was a licensed real estate broker But there was no testimony by Molitor That she relied upon Plumquist's expertise Due to her being a licensed real estate broker And in fact it was Molitor who prepared the joint tenancy deeds Both of the joint tenancy deeds, not Plumquist And furthermore The only testimony concerning Plumquist's expertise With regard to real estate Was the fact that she said yes She had sold a couple of her own homes That was it Nothing about preparing deeds Nothing about understanding deeds And in fact if you take a look at the deed of 2013 It's apparent that Plumquist didn't understand deeds Well, I mean it's been a long time But I thought real estate agents could not prepare deeds I thought that had to be done by counsel Or by the parties who are not acting They're acting on their own behalf But they're not engaging in the improper practice of law So maybe she didn't prepare the deeds Because she felt she couldn't Well, it didn't stop Molitor from preparing the deeds Well, she was representing herself at the time She wasn't a real estate agent Bound by licensing issues Well, I think in this context If the deeds were to be prepared in Plumquist could have prepared the deeds Because she could have been preparing them in her own behalf That would be my argument on that issue So those are the only factors that can be pointed to As to why a fiduciary relationship is critical What about those cases that she cites? She cited McCarty, she cited several cases Tell us why those cases don't apply here Don't control here Well, because those cases They're indistinguishable on the facts Secondly, in this particular case It's clearly from the facts of this case That a fiduciary relationship was not created There's no evidence that Linda relied on Donna For her financial decision-making None That's your argument, right? There had to at least be some type of influence To create a fiduciary relationship In fact, the testimony specifically stated That when it was asked of Molitor Did Lindquist ever advise you with regard to your finances? No Was she your power of attorney? No Was she your trustee? No Did you have an estate plan? Yes I need other people Was she your executive? No And there is no evidence at all That there was ever any advice given by Lindquist to Molitor Upon which Molitor relied And then there's this dichotomy in the testimony Lindquist, Molitor stated that there was an agreement Between them to have Title return to Molitor Once her financial problems were passed Lindquist denied any agreement by her to return Title to Molitor Molitor said that the transfer of Title was Lindquist's idea Lindquist denied that the transfer of Title by Molitor To eliminate Molitor's name on the deed was her idea Let me ask you sort of a blunt question Didn't your client in a sense get, I don't know if it's legal or not Get unjustly enriched by this? He comes up with this property and obviously the plaintiff had an interest in this property And now it's gone Isn't that unjust enrichment? Well that can be unjust enrichment But it doesn't constitute unjust enrichment in this case For the reason that the idea for the transfer of the property Was Molitor's And Molitor wanted that transfer to take place So that she could avoid having this property attached to her She asked her sister for a favor You're not arguing that she did it without ever expecting to get it back, are you? I don't know what she expected Common sense would tell you she probably wasn't making a gift, was she? I mean in all candor Well, I can state this That according to Lundquist's testimony She said to Molitor at the time You understand you're waiving a right here And that you're giving up this right And Molitor just shrugged her shoulders She never cared about getting it back obviously, right? That's the implication, right Okay, so the strike was odd Would most people just give their interest in property away for no good reason? You know, at the time Molitor had creditors chasing her She didn't know how long that was going to take She didn't want to apparently Well, I mean there was a reason I think we can all agree on that I think your opposing counsels conceded that she wanted to do that To protect the property against her creditors But the question becomes Why would somebody do that if they weren't expecting to get it back? Well, and my point is that she was conceding because She never anticipated getting the property back Within a near future because the creditors would be chasing her Due to her financial problems I mean she testified that she lost her home She lost her motor home She was being foreclosed and so on And she didn't want her mother to lose her home And she didn't want her mother to lose her home By having her name on the title So in Molitor's mind she may have thought Well, I'm never going to see any of this property because of my situation So therefore did not expect to get it back And if they had a family relationship She may have thought in her own mind Well, it's better that my mother and my sister have this property An interest in the property And I'll just give up my interest But that thought in her own mind Flew in the face of what her mother and her father had wanted You don't disagree with that either, do you? In this sense I don't believe that anything that was said about What the father wanted or what the mother wanted Is competent evidence It was hearsay And I don't believe it should be included Was it objected to? Yes And it was a continuing objection He let it in on the exception of showing state of mind You're not contesting that here That evidentiary ruling is not part of this Is it? No, I didn't cross appeal on that I never really know But the court found Longquist's testimony to be credible And in order to overcome the court's findings The Molitor has to prove that the court's findings Were against the manifest weight of the evidence The trial judge heard the testimony He observed the demeanor of the witnesses He weighed the evidence And he was uniquely situated to determine Which of the two witnesses was more credible And he specifically found in his findings That he found Longquist's testimony to be credible And that she had stated to Molitor At the time that Molitor agreed to transfer title Out of her name That she was giving up her right In Pottinger Which is a second district decision It was held that when a fiduciary relationship Does not exist as a matter of law It may nevertheless arise When trust and confidence By reason of friendship, agency and experience Are reposed by one person and another So that the latter gains influence and superiority Over the former And you're saying there was no history of that The evidence doesn't establish that Correct And I think that It's already been argued by counsel The factors to be considered Which is degree of kinship of the parties Disparity in age, etc. And this has to be proven by clear and convincing evidence Pottinger goes on to hold That the existence of a blood relationship or friendship Does not of itself establish a fiduciary relationship One person's assistance of another in business affairs Does not of itself establish a fiduciary relationship And for those reasons We believe that the decision of the trial court Should be affirmed Thank you, counsel Counsel, if you want to respond, you may Thank you for this opportunity Just a few brief points I'd like to mention Some questions were asked about Defendant Ms. Lundquist's familiarity with deeds and contracts She specifically testified that she was familiar With deeds and contracts as a realtor And that she specifically in her testimony Indicated that she had advised my client, Ms. Mahler As what the impact of that May 23, 2011 deed would be That was denied by my client That she'd ever been informed of that But that I believe is significant Because that is indicative of the defendant's Superior level of knowledge At least with respect to the effect of these documents Important in kind of dovetailing with that Was Ms. Lundquist's own explicit testimony That she never intended to return the property back To Ms. Mahler Well, you take that with the other testimony That the trial court found to be credible Was that she cautioned her client That by giving this up She's giving up her interest in the property And the trial court found that to be credible, correct? He did, and the court also found Ms. Mahler to be credible When she said that she was not informed of that That she did not know the effect of these deeds And these documents And in Ms. Mahler's testimony She said, had I known that I never would have done this I would have gone to my attorney Which she didn't do until after the property was listed for sale And the closing was pending And if the trial court says both parties are equally credible Who wins that fight When it's to your client's burden? Well, sadly, I think that's what brings us here, Your Honor And I think that the evidence establishes That there is enough evidence for you to see That the manifest weight of the evidence Brings us into the purview of the constructive trust Which is what we're seeking here I would like to make just a few points On Ms. Lundquist's specific testimony She said that after the May 23, 2011 deed was recorded Transferring the property to the mother And to Ms. Lundquist She never had any intention of transferring the property back She had thought about splitting the proceeds of the home with Ms. Mahler But, quote, I did not come up with any agreement Any numbers, any terms, nothing else Explaining that at one point she intended to divide the proceeds She said, yes, at one point in time Because my mother told me to take it And do whatever I thought was best I was entertaining giving her, meaning Ms. Mahler, money But upon inquiry from the court Ms. Lundquist testified that after her mother's death She was thinking of giving Ms. Mahler some amount of money From the sale of the property But she changed her mind Because of the filing of the lawsuit, quote Linda filing the lawsuit You know, my mother told me to do what was right What I thought was right Not what they thought was right, unquote I think that is indicative of Ms. Lundquist's intent From the moment that May D was executed There was never intention to hold it Her intent doesn't create the responsibility The fiduciary duty If there is another cause of action Created by that intent, maybe But I believe that that's what she felt And probably it was deepened by the filing of the lawsuit But we've got to get to the first hurdle And other than sisters And the fact that they had been cordial at some point in time By returning, you know, paying back money that had been lent We're sort of, and mother and dad's intentions Even though counsel said he doesn't believe they're appropriate They were part of this record They don't seem to add up to a fiduciary responsibility And that's what I'm struggling with I understand, and I think And that brings us back to the case that was cited by Ms. Lundquist That's the Pottinger case Where the court tells us That the fiduciary relationship may arise When trust and confidence By reason of friendship, agency, and experience Are reposed in one Who thereby gains superiority over another Here the trust and confidence were reposed in the defendant By the plaintiff They are sisters Both admitted a close relationship Strained at times over the years But both indicate that it was close And they didn't have the long history of helping each other In difficult times Paying money back, et cetera Which we've discussed already Ms. Lundquist became Ms. Molitor's agent Upon the execution of that May 23, 2011 deed With this agreement In the presence of their mother That they were going to effectuate the mother's wishes And share equally And you have the experience Not only defendant's experience as a realtor And understanding what these documents are doing But also the experience that the sisters have with one another Again, of this helping each other in hardship The repayment Ms. Lundquist coming to work for my client In a business setting, et cetera My client put her faith in her sister She reposed her trust in the defendant By which the defendant then gains influence She gains the property Complete and total It's the exact circumstances In which Pottinger imposed that constructive trust I believe the circumstances mirror one another And I believe a constructive trust is appropriate here And I would ask Your Honor to reverse the decision of the lower court Thank you And I thank you Thank you both for argument We will make a decision in due course And today we now stand adjourned